IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

WESLEY HIGGINS, KRISTINA ) 
JACOBSEN, and CHECKMATE SMALL ) 
BUSINESS SOLUTIONS, ) 
 ) 
　　　　　Plaintiffs, ) TC-MD 170047G
 ) 
　　v. ) 
 ) 
DEPARTMENT OF REVENUE, ) 
State of Oregon, ) 
 ) 
　　　　　Defendant. ) **FINAL DECISION**[1]

　　　　This is an appeal of adjustments to an S corporation's income and deductions. Plaintiffs

appealed Defendant's notices of assessment for the 2012 and 2013 tax years, each of which was

issued after a conference decision. A trial was held on June 29, 2017. Terry K. Schandel

(Schandel), CPA, appeared and testified on behalf of Plaintiffs. Nancy Berwick (Berwick),

Senior Tax Auditor, appeared and testified on behalf of Defendant. Plaintiffs' exhibits 1 to 8 and

Defendant's exhibits A to K were received without objection.

## I. STATEMENT OF FACTS

　　　　During the years at issue, CheckMate Small Business Solutions (CheckMate) was an S

corporation partly owned by Plaintiff Wesley Higgins (Higgins). According to CheckMate's

Schedule K-1s, Higgins was a 50-percent shareholder in 2012 and a 47.97-percent shareholder in

2013. (Def's Exs A at 7; B at 12.) In 2012, CheckMate's address was the same as the address of

the other 50-percent shareholder, Bryan Petersen. (Def's Ex A at 6.) In 2013, two more people

became shareholders: David Cox and Steven Peck. (Def's Ex B at 12–17.) Plaintiff Kristina

---

[1] This Final Decision incorporates without change the court's Decision, entered December 15, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Jacobsen, Higgins's wife, was not listed as a shareholder on CheckMate's Schedule K-1s.

Plaintiffs' sole witness at trial was their certified public accountant, Schandel. Schandel had been hired by Plaintiffs during Defendant's audit in late 2015, after Higgins had ceased operating CheckMate. According to Schandel, CheckMate's original returns—prepared from records maintained by Higgins—were inaccurate. Schandel reconstructed profit and loss statements, ledgers, and journals from CheckMate's bank statements and from transaction reports obtained from CheckMate's principal vendor, an internet-based software company identified as "Agile." Schandel testified that the bank accounts from which he constructed the books were used exclusively for business purposes. He assigned expenses from bank statements to general ledger accounts, and in some cases consulted Higgins to determine what account an expense fit in.

Plaintiffs presented virtually no details of CheckMate's business except for Schandel's testimony that it was a "payroll service." Schandel's hearsay testimony was supported by CheckMate's 2012 and 2013 federal tax returns, which listed "payroll and HR" as CheckMate's "product or service." (Def's Exs A at 2, B at 2.) According to Schandel, Higgins was a salesperson for whom meal and entertainment expenses were an ordinary part of business.

CheckMate claimed several expense deductions on its 2012 and 2013 returns. Some expenses that were claimed as deductions in 2012 were claimed as "cost of goods sold" (COGS) in 2013. Others were changed to different categories, or spread among multiple categories. Some expenses claimed on the returns were not reflected in Schandel's reconstructed profit and loss statements. Other expenses were introduced for the first time on the profit and loss statements. The following table summarizes the income and deduction amounts claimed on the original returns. It also shows the amounts on the reconstructed profit and loss statements and the amounts allowed by Defendant at conference.

|  | TAX YEAR 2012 | | | TAX YEAR 2013 | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | *Return* | *P & L* | *Conference* | *Return* | *P & L* | *Conference* |
| **INCOME** | | | | | | |
| Gross Receipts | $58,028 | $63,801 | $63,801 | $105,585 | $113,458 | $130,132 |
| Other Income | $593 | -0- | $593 |  | $25 | -0- |
| Bus. Prop. Sales |  |  |  | ($30) | -0- | -0- |
| **COGS** | | | | | | |
| Agile Process. Fee |  |  |  | $31,603 | $32,555 | $32,555 |
| Office Supplies |  |  |  | $3,441 | $5,768 | $2,916 |
| Postage & Delivery |  |  |  | $3,792 | $3,663 | $1,215 |
| Professional Fees |  |  |  | $7,147 | $3,533 | -0- |
| Swipeclock |  |  |  | $983 | -0- | -0- |
| "Other client expenses" |  |  |  | -0- | $1,362 | $1,362 |
| **DEDUCTIONS** | | | | | | |
| Officer comp. | $4,645 | -0- | -0- | $28,000 | -0- | $28,000 |
| Salaries and wages | -0- | $4,645 | $4,645 | $3,162 | $31,162 | $3,162 |
| Repairs & maint. |  |  |  | -0- | $1,048 | -0- |
| Rents | $331 | $320 | -0- | $6,057 | $5,805 | $4,605 |
| Taxes and licenses | $3,686 | $373 | $373 | -0- | $215 | $215 |
| Payroll taxes |  | $719 | $719 | $3,822 | $8,878 | $2,644 |
| Interest | $479 | -0- | -0- |  |  |  |
| 4562 depreciation |  |  |  | $2,854 | -0- | -0- |
| Advertising | $1,894 | -0- | $225 |  |  |  |
| Employee benefit | $189 | -0- | -0- |  |  |  |
| **OTHER DEDUCTIONS** | | | | | | |
| Agile Process. Fee | -0- | $27,426 | $19,933 |  |  |  |
| Legal/professional | $20,956 | -0- | -0- |  |  |  |
| Office | $2,793 | $2,862 | $1,488 |  |  |  |
| Postage | $3,300 | $2,815 | $272 |  |  |  |
| Professional fees | -0- | $1,063 | -0- |  |  |  |
| "Other client expenses" | -0- | $2,625 | -0- |  |  |  |
| L & I taxes | -0- | -0- | $2,625 |  |  |  |
| Auto and truck | $1,684 | $684 | -0- | $5,135 | $4,680 | -0- |
| Bank charges | ($40) | ($10) | ($10) | -0- | $400 | $400 |
| Bookkeeping | -0- | $586 | -0- | -0- | $72 | -0- |
| Commissions | $886 | -0- | -0- | -0- | $3,173 | -0- |
| Contract services | -0- | $350 | -0- | $14,424 | $20,244 | -0- |
| Dues/subscriptions | $275 | -0- | -0- | -0- | $445 | -0- |
| Garnishments |  |  |  | -0- | $872 | $150 |
| Insurance | $2,302 | $2,678 | $1,897 | $2,897 | $2,706 | $1,397 |
| Marketing | -0- | $2,217 | -0- | $89 | $597 | -0- |
| Meals/Entertain. | $385 | $929 | -0- | $686 | $1,423 | -0- |
| Miscelleneous | $901 | $1,663 | -0- | $896 | $2,133 | -0- |
| Software | -0- | $2,297 | $2,297 | -0- | $3,582 | $3,582 |
| Internet | -0- | $5,221 | -0- | -0- | $4,101 | $4,101 |
| Telephone | $13,704 | -0- | $5,221 | $4,891 | $1,311 | $1,311 |

Additional details regarding the returns and profit and loss statements will be introduced where pertinent in the analysis.

All but a few pages of Plaintiffs' exhibits consisted of the reconstructed books, bank statements for two of CheckMate's bank accounts, and spreadsheets captioned *myPayrollDepartment Revenue and Fees*, identified by Schandel as 2012 and 2013 "Agile Reports" (Ptfs' Exs 1–6). The statements of accounts provided with the ledgers showed that CheckMate had four bank accounts. (*See, e.g.* Ptfs' Ex 1 at 2–3.) The conference decisions indicate that documents were presented at conference to substantiate expenses that were not provided to the court—such as leases, insurance policies, and telephone expense statements. (*See, e.g.,* Def's Ex E at 3–4.) In this proceeding, Plaintiffs submitted just a few additional documents besides the books, bank statements, and Agile Reports: an annotated copy of CheckMate's 2012 and 2013 "Meals and Entertainment" accounts (reportedly prepared by Higgins sometime after the ledgers were created in late 2015); a 2013 Form 1099-MISC that identified Jacobsen as the recipient of $408.00 of "other income" from CheckMate; a copy of an executed "Independent Contractor Agreement" between CheckMate and one Tina Nielsen, effective December 21, 2012; a Form W-9 signed by Tina Nielsen on February 19, 2013; and copies of several business cards from vendors named in the ledgers (Ptfs' Exs 7–8).

With respect to the disallowed deductions, Schandel testified that he concluded the expenses shown in the ledgers were business-related because they were all paid from CheckMate's business accounts. He testified that he personally knew some of the vendors named in the ledger, and that those vendors only performed work for businesses. Schandel conceded that expenses for life insurance contained in the ledger were not deductible.

/ / /

Berwick testified that she had adjusted CheckMate's 2013 gross receipts after conducting a bank deposit analysis. Her summary of that analysis shows that deposits made to two accounts at First Republic Bank and two accounts at Pacific Continental Bank were added up. (Def's Ex H.) Then, because Agile had netted its processing fees out of its deposits into CheckMate's accounts, Berwick added those processing fees to the total of bank deposits. After removing one large deposit that was shown to be a loan, Berwick arrived at a total 2013 income of $130,132. (*See* Def's Ex E at 4.)

Plaintiffs requested that their income and expense deductions be adjusted to conform to Schandel's reconstructed books (column labeled "P & L").[2] Defendant requested that its assessment be upheld (column labeled "conference").

## II. ANALYSIS

At issue are CheckMate's income and the expense deductions over the years at issue, which flow through to the other plainiffs.

Subject to exceptions not pertinent here, taxable income in Oregon is identical to taxable income under federal law. ORS 316.022(6); ORS 316.048.[3] So far as practicable, Oregon follows the "administrative and judicial interpretations of the federal income tax law." ORS 314.011(3). Plaintiffs must show their entitlement to relief by a preponderance of the evidence. ORS 305.427.

/ / /

/ / /

/ / /

---

[2] Schandel indicated in his second status report that the disallowance of Higgins's and Jacobsen's Schedule A employee business expenses had "not been resolved." No such claim was stated in the Complaint and no evidence of employee expenses was provided at trial. Employee business expenses are not at issue.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

A.    *Income*

1.    *2012 other income*

Defendant increased CheckMate's 2012 total income by $593 over the amount stated in Schandel's profit and loss statement. CheckMate had reported "other income" of $593 on its 2012 return in addition to gross receipts. Schandel's profit and loss statement reported additional income of over $5,000, including income from payroll processing fees, consulting fees, and "other fees." Defendant increased CheckMate's gross receipts to match the amount shown on Schandel's profit and loss statement but did not adjust CheckMate's "other income."

Plaintiffs did not provide evidence that the amount reported as "other income" on CheckMate's return was included in Schandel's profit and loss statement. No transaction in the reconstructed ledger clearly corresponds to the amount of the "other income." Over $3,400 in transactions were labeled "other fees"; it is not clear whether any of those transactions represents the "other income" reported on the return. Plaintiffs did not offer firsthand testimony of CheckMate's sources of income in 2012. Plaintiffs did not offer testimony from anyone knowledgeable about the 2012 return. They did not bear their burden to prove the "other income" that Checkmate reported should be eliminated. *See* ORS 305.427.

2.    *2013 gross receipts*

Where a taxpayer's books do not clearly reflect income, the Department of Revenue may demonstrate unreported income "by any practicable proof that is available in the circumstances of the particular situation." *Brenner v. Dept. of Rev.*, 9 OTR 299, 306–07 (1983) (quoting *2 Mertens Law of Federal Income Taxation* § 12.12); *cf. U.S. v. Doyle*, 234 F2d 788, 793 (7th Cir 1956). Bank deposit analysis, which involves inferring that deposits into a taxpayer's bank account represent income, is one such indirect method. *See Brenner*, 9 OTR at 302 n 2; *Doyle*,

234 F2d at 793. "A bank deposit is *prima facie* evidence of income * * *." *Tokarski v. C.I.R.*, 87 TC 74, 77 (1986).

Here, CheckMate admits that its initial returns were based on inaccurate records. Defendant was therefore charged with looking beyond CheckMate's records to determine its income. *See Brenner*, 9 OTR at 306–07. The sum of CheckMate's deposits into its four bank accounts is *prima facie* evidence of its income. *See Tokarski*, 87 TC at 77. Defendant's method of adding the Agile processing fees to the gross receipts is reasonable to avoid CheckMate gaining a windfall from deducting those fees.

Plaintiffs did not provide evidence to overcome the evidence of income from the bank deposit analysis and Agile reports. Plaintiffs provided bank statements for only two of the accounts; the other two accounts were not made available for the court's review. Plaintiffs did not offer testimony from anyone with firsthand knowledge of the sources of CheckMate's income and its deposits. Nor did Plaintiffs offer any corroborating documentation to show that CheckMate received a loan or other source of capital that was not taxable as income. Plaintiffs did not bear their burden of proof on the issue of gross receipts in 2013.

B.      *Deductions and COGS*

The court will analyze the items claimed by CheckMate as COGS in 2013 as deductions. The concept of COGS is applicable in "manufacturing, merchandising, or mining" businesses, where the "cost of goods purchased for resale" is offset against total receipts to obtain gross income. Treas. Reg. §§ 1.61–3(a), 1.162–1(a). The court has not located authority for claiming COGS where no tangible "goods" are purchased and resold. Because CheckMate's business was payroll services, the items it claimed as COGS in 2013 may be deducted from its gross income if they satisfy the conditions of Internal Revenue Code (IRC) section 162.

IRC section 162(a) allows taxpayers to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"

> "An expense is 'ordinary' if it is 'normal, usual, or customary' in the taxpayer's trade or business. An expense is 'necessary' if it is 'appropriate and helpful' in the taxpayer's business, but it need not be absolutely essential. Whether an expense is deductible under section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances."

*Adams v. Comm'r*, 105 TCM (CCH) 1029 (2013), 2013 WL 135103 at *9 (US Tax Ct) (citations omitted). "To prove entitlement to deduct an expense, the taxpayer must prove not only the fact of the expenditure but also the business purpose (or other deductible character) of the expense." *Rogers v. Comm'*r, 108 TCM (CCH) 39 (2014), 2014 WL 3537775 at *7 (US Tax Ct), *amended on recons in part*, 2014 WL 6805465 (Nov 26, 2014). Business expenses are those that are "directly connected with or pertaining to the taxpayer's trade or business." Treas. Reg. § 1.162–1(a).

The business purpose of expenses not subject to heightened substantiation requirements can be established by credible testimony. In the absence of such testimony, bank statements and payment records alone may be unpersuasive. *See*, *e.g.*, *Odelugo v. C.I.R.*, 95 TCM (CCH) 1355 (2008), 2008 WL 976914 at *9 (US Tax Ct) (finding bank statements and canceled checks did not establish expenses were incurred in conducting business); *Alemasov v. C.I.R.*, 93 TCM (CCH) 1254 (2007), 2007 WL 1484527 at *5 (US Tax Ct) (finding credit card statements did not establish business purpose of purchases).

In the present case, Plaintiffs did not present firsthand testimony of the business purpose of the expenses. Instead, they relied on bank statements and canceled checks, which Schandel had organized into ledgers and profit and loss statements. Schandel testified that all the expenses

/ / /

were incurred for business purposes because they were paid from a business bank account. However, Schandel was hired after Higgins had ceased operating CheckMate.

What is more, Plaintiffs did not show that CheckMate's deductions were claimed for ordinary and necessary expenses. Plaintiffs provided only a rudimentary picture of CheckMate's business—it was a "payroll service." Even assuming that all expenses in the ledger were incurred for business purposes, the court is left without a standard to measure whether the expenses were ordinary and necessary in CheckMate's business. It is certain that not all of the expenses were ordinary and necessary; Schandel conceded as much with respect to certain life insurance payments made from CheckMate's accounts.

Without firsthand testimony of the nature of the expenses or of the business, the court does not have enough evidence to find that the expenses were incurred for business purposes.

### III.  CONCLUSION

Plaintiffs have not carried their burden of proof with respect to either the amount of CheckMate's income or the character of its expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of January, 2017.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Lundgren and entered on January 3, 2018.*